1  MARC J. WINTHROP – State Bar No. 63218
   mwinthrop@winthropcouchot.com
2  GARRICK A. HOLLANDER – State Bar No. 166316
   sokeefe@winthropcouchot.com
3  JEANNIE KIM – State Bar No. 270713
   jkim@winthropcouchot.com
4  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
5  660 Newport Center Drive, Fourth Floor
   Newport Beach, CA 92660
6  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>LOCAL CORPORATION, a Delaware corporation,<br><br>        Debtor and<br>        Debtor-in-Possession. | Case No.  8:15-bk-13153 SC<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[DECLARATION OF KEN CRAGUN IN SUPPORT HEREOF FILED CONCURRENTLY HEREWITH]**<br><br>DATE:    June 24, 2015<br>TIME:    10:00 a.m.<br>PLACE:  Courtroom 5C<br>            Ronald Reagan Federal Building<br>            and U.S. Courthouse<br>            411 W. Fourth Street<br>            Santa Ana, CA 92701 |

1 | Local Corporation (the "Debtor") hereby moves ("Motion") the Court, <u>on an emergency basis</u>, for an order granting the following relief:

(1) Authorizing the Debtor to use any and all "cash collateral," as that term is defined in 11 U.S.C. § 363(a), now on hand or hereafter collected, pursuant to the terms and conditions contained in this Motion, pending a final hearing;

(2) Setting a final hearing on the Motion; and

(3) Such further relief as the Court deems just and proper.

This Motion is made on the basis of the concurrently filed Declaration of Ken Cragun ("Cragun Declaration"), the within points and authorities, and on such other evidence as the Court elects to consider prior to or at the hearing on this matter.

DATED: June 23, 2015          **WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**

By: ___/s/ Garrick A. Hollander___
    Marc J. Winthrop
    Garrick A. Hollander
    Jeannie Kim
[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF

The Debtor, a publicly traded Delaware corporation (NASDAQ symbol LOCM), is a leading local advertising technology company located in Irvine, California that connects millions of online and mobile consumers with businesses and products through a variety of innovative digital advertising solutions. The Debtor employs approximately forty-eight (48) people. In calendar year 2014, the company generated approximately $83.0 million in revenues, $2.4 million in adjusted EBITDA, and a net loss of approximately $5.5 million.

The Debtor's cash and cash equivalents are subject to a purported "lien" in favor of Fast Pay Partners, LLC ("Lender"). This lien secures a credit facility with an outstanding balance of approximately $2.3 million. The collateral base securing Lender's debt includes, but is not limited to approximately $8.4 million in accounts receivable, and a suite of intellectual property assets, which includes thirteen valuable patents. Accordingly, Lender is adequately protected by a substantial equity cushion. Moreover, as the Cragun Declaration filed concurrently herewith confirms, the Debtor projects that it will generate positive EBITDA through post-petition operations, as it has successfully done for the eight of the last nine quarters. Accordingly, no depletion of the Lender's collateral base is expected to occur post-petition.

The value of the Debtor's business lies in its technologies, unique products, scalable platforms, extensive partner network, employees, and the thousands of customers and clients who use its services daily. In order to preserve and maintain the value of its business for the benefit of its creditors and shareholders, the Debtor must have immediate access to the use of all cash collateral on the terms prayed for herein.

## II

## **BACKGROUND FACTS**

**A.    The Debtor.**

The Debtor was founded in 1999 and went public in 2004.  The Debtor has been one of the fastest growing online local media businesses for a number of years, and for the past four years it has been listed by Deloitte on its Technology Fast 500.

The Debtor is in the business of providing search results to consumers who are searching online for local businesses, products and services.  The search results generated by the Debtor's technology platform consist primarily of local business listings that the Debtor's technology aggregates, indexes, normalizes, and syndicates.  These search results are provided through the Debtor's flagship Local.com website and through other proprietary websites, and they are also delivered to a network of over 1,600 other websites that rely on the Debtor's search syndication services to provide local search results to their own users ("Network").  The Debtor generates revenue from these services through the various ad units that are placed alongside search results, which include pay-per-click, pay-per-call, and display (banner) ad units, including video.  The Debtor's Local.com website has approximately 14 million unique visitors each month ("MUVs"), and its Network syndication services reach approximately 5 million MUVs.

The Debtor's expertise in the areas of local search, search engine marketing, search engine optimization, search syndication/analysis and reporting at large scale, internet indexing and normalizing has enabled the company to develop and deploy new technologies and products.  As of this writing, the Debtor holds thirteen patents, and a number of additional patent applications are pending.  These technologies have enabled the Company to achieve great success in growing the number of consumers that its media reaches.  By the end of 2013, the Company had reached record levels of traffic in the mobile search space.

The growth and profit potential in the Debtor's business space is substantial.  According to BIA/Kelsey, the leading research and advisory company focused on the local advertising marketplace, U.S. local online advertising revenue will reach approximately $137.5 billion in 2014. The "local search" segment of this revenue total – that is, searches for products, services

and businesses within a geographic region – has become increasingly important to the online advertising industry. Local search allows consumers to search for local businesses' products or services by including geographic area, zip code, city and other geographically targeted search parameters in their search requests – such as entering "florists in Irvine, CA." In this regard, BIA/Kelsey estimates that the local search market in the U.S. will grow from $6.3 billion in 2013, to $8.6 billion by 2017. The Debtor's existing technology platforms and the new products that it is in the process of deploying ideally position the Company to take advantage of this growth trend.

As more fully explained herein, the Debtor was forced to file, on June 23, 2015 (the "Petition Date"), Chapter 11 due to a temporary and incidental liquidity problem that could not be bridged within the time available through third party financing. The instant filing will provide the Debtor the time to maximize value through the sale of its business as a going concern.

**B.    Financial Data.**

In calendar year 2014, the Debtor generated $83.0 million in revenues, $2.4 million in adjusted EBITDA, and a net loss of approximately $5.5 million. The Debtor has generated positive EBITDA for eight of the last nine quarters. As of June 22, 2015, the Debtor had approximately $20,000 in cash, $8.4 million in accounts receivables, plus intellectual property assets with significant value.

As of the Petition Date, the Debtor anticipates that Lender will assert a purported lien against the Debtor's assets in the amount of approximately $2.3 million, Lender under the terms of that certain *Financing and Security Agreement* entered into on March 9, 2015 (the "Loan Agreement"). The Debtor believes that Lender will assert a lien against all of the Debtor's personal property.

As of the Petition Date, the Debtor had approximately $20 million of unsecured debt. The unsecured debt is comprised of approximately $11 million in accounts payable, and approximately $9 million of unsecured financing.

**C.    Events Precipitating Debtor's Chapter 11 Filing.**

The Debtor's Chapter 11 filing was precipitated by its short term cash flow needs. This problem was caused by the following developments:

1. <u>Clawbacks</u>.  The Debtor's Network partners, including Yahoo and Google, pay the Debtor based upon the amount of "traffic" that is generated by or through the Debtor's services and technologies.  In the first quarter of 2014, the Debtor was anticipating $1.6 million of revenue from these sources based upon "traffic" that was later determined to be of too low a quality to justify this payment.  As a result, this $1.6 million in revenue was not collected;

2. <u>Operational Results</u>.  Like most growing technology companies, the Debtor periodically expends more cash that it takes in from operations.  This "burn" factor is largely attributable to the fact that a significant amount of corporate revenues are expended on developing and enhancing technological platforms and products.  Although these platforms and products will generate revenues in the future, the product cost is front-loaded and consequently this product development expense can create, or in this case, add to, a near term liquidity problem.

### D. **The Proposed Use of Cash Collateral**.

The Debtor's employees deliver a suite of services to thousands of customers and daily, through a series of sophisticated technological platforms. Preserving this business is critical to the success of the Debtor's reorganization effort and to the Debtor's ability to repay the claims of its creditors. In order to accomplish this end, the Debtor must have the immediate ability to use cash collateral to pay the ordinary and necessary business expenses and charges itemized in the budget ("Budget") attached as Exhibit "1" to the Cragun Declaration and incorporated herein by this reference.[1]  The Debtor proposes to use cash collateral of the Lender pursuant to the terms and conditions set forth below:

---

[1] The Debtor is managed by an experienced and well-respected management team. Accordingly, there is every reason to defer to their assessment of the Debtor's financial needs. *See In re Princeton Square Assocs., L.P*., 201 B.R. 90, 95 (Bankr. S.D.N.Y.1996) ("Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." The entire presumption underlying Chapter 11 is that the debtor in possession will continue to operate the debtor's business. The Lender would like to stand this presumption on its head by denying the Debtor in its capacity as debtor in possession the ability to operate its business by preventing the use of the rents without the necessity of proving that cause for the appointment of a trustee exists. *See* 11 U.S.C. § 1104(a).").

1.  <u>Budget</u>.  The Debtor will be authorized to make the expenditures provided for in each budget monthly, and if necessary, to exceed the amounts set forth in each respective budget by as much as 15% of budget total; however, if the Debtor's revenues increase, then the Debtor's expenditures may exceed the amount of the expenditures set forth in the respective budget in proportion to the increase in actual revenues from budgeted revenues.  Any expenditures in excess of this authorization will require the written approval of the Lender, or further order of the Court after appropriate notice.  Budget savings for the Debtor in any month may be carried over and used by the Debtor in subsequent months (<u>i.e.</u>, to account for changes in the timing of expenditures by the Debtor).  After the expiration of the term of the budget, the Debtor will be able to obtain use of any cash collateral of the Lender by filing and serving an amended budget; if no objection to the terms of such budget is filed within ten (10) days after the service of such budget, the amended budget will be deemed to have been approved.  If an objection is filed with the Court and served upon the Debtor, then the Debtor may continue to use cash collected pending a hearing on such objection.

2.  <u>Replacement Lien</u>.  As and for adequate protection of the Debtor's use of any cash collateral of the Lender, the Lender will be granted a replacement lien in the Debtor's post-petition cash, accounts receivable and inventory, and the proceeds of each of the foregoing, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by the Lender as of the Petition Date, limited to the amount of any cash collateral of the Lender as of the Petition Date, to the extent that any cash collateral of the Lender is actually used by the Debtor.

3.  <u>Reservation of Rights</u>.  The Debtor, the Committee, once appointed, and all other parties-in-interest reserve any and all rights that they may have to object to the claims of the Lender and to object to the validity, priority and extent of the Lender's liens, if any, encumbering the Debtor's assets.

4.  <u>Financial Reporting</u>.  The Debtor will provide to the Lender all monthly operating reports required to be submitted to the Office of the United States Trustee, and

-7-

monthly cash flow reports, broken down by the expense line items contained in the budget, within 25 days after the end of each calendar month following the Petition Date.

5. <u>Final Hearing on this Motion</u>.  The Debtor reserves the right to seek, at the final hearing on this Motion, use of cash collateral different from that set forth herein.

Based upon the Budget set forth on Exhibit "1," the Debtor believes that this Court should authorize the Debtor's use of cash collateral in connection with its ongoing business operations.

### E.  **Adequate Protection Facts.**

The Debtor's Chapter 11 filing was precipitated by a cash flow/financing problem, not a core business problem. To the contrary, the Debtor is a well-managed dynamic technology company that has achieved positive Adjusted EBITDA for eight of the last nine quarters, which means that its operations have not been depleting the corporate balance sheet.[2] As more fully set forth in the Cragun Declaration, the Debtor projects that its operating results will continue to be positive at the Adjusted EBITDA level during the period encompassed by the Budget (13 weeks) and thereafter. As the within authorities confirm, these operating results, without more, provide Lender's secured position ample adequate protection.

Additionally, Lender's secured position is adequately protected by a substantial equity cushion. The Debtors' receivables base is $8.4 million, and since the Debtor has historically had an average collection percentage of 99% on receivables, Lender's equity cushion (collateral value over and above its debt) before considering other assets, is 266%. When the balance of the Debtor's assets are taken into account, and in particular the Debtor's valuable intellectual property assets, Lender's equity cushion increases to a multiple of what it owed. In sum, this lender's interest in the Debtor's property is adequately protected.

### III

### **RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS**

In Section 363(c)(3) of the Bankruptcy Code, Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearing "shall be scheduled in accordance with the needs of the debtor".  11 U.S.C. §

---

[2] As explained above, the cash flow problem was caused by, among things, an unanticipated revenue "clawback."

1  363(c)(3). The courts have also recognized that emergency relief on the use of cash collateral is

2  necessary after a case is filed. *See In re Center Wholesale, Inc.*, 759 F. 2d 1440, 1444 (9th Cir.

3  1985) ("We realize that 'in certain circumstances the entire reorganization effort may be thwarted

4  if emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous

5  process, seldom more so than at the outset of the proceedings when the debtor is often without

6  sufficient cash flow to fund essential business operations.' … It is for this very reason that

7  Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in

8  accordance with the needs of the debtor.' "); *see also In re Sullivan Ford Sales*, 2 B.R. 350, 355

9  (Bankr. D. Me. 1980).

10  As indicated above, in order to preserve and maintain its business, the Debtor must have

11  the ability to pay the expenses set forth in the Budget. Without this relief, the Debtor's business

12  will precipitously decline in value damaging the interests of all creditors and this reorganization

13  effort. On these facts and circumstances good cause exists for an expedited hearing on limited

14  notice.

**IV**

**THE USE OF THE CASH COLLATERAL SHOULD BE**

**AUTHORIZED IN ACCORDANCE WITH THE BUDGET**

18  To obtain court authorization to use cash collateral, a debtor must establish that the

19  "interest" of creditors holding liens on the subject collateral will remain "adequately protected."

20  11 U.S.C. § 363(e). Pursuant to *United States v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.

21  Ct 626 (1988), the "interest in property" entitled to adequate protection under Section 363(e) is no

22  more or less than the "value of the collateral" that is subject to the secured creditor's lien.

23  Under the *Timbers*' holding, a debtor is merely required to show that the secured creditor's

24  collateral will not decline in value under the debtor's proposed usage of cash collateral. *See

25  Timbers*, 108 S. Ct at 633; *see also In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D.

26  Mass. 1990) (So long as the receivables being collected and used by the debtor are being replaced

27  by sufficient new receivables in which the creditor is granted a security interest, the creditor is

28  adequately protected); *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (Since value of the

collateral has not declined, the bank is not impaired and is not entitled to receive adequate protection payments); *In re Century Inv. Fund VII, Ltd. P'ship*, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (Where value appears to be stable, creditor is not entitled to adequate protection payments); *In re Kessler*, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under *Timbers*, the sellers are not entitled to adequate protection payments, as there was no showing the 80-acre tract was depreciating in value); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (Secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); *In re McCombs Props. VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988); *In re Elmore*, 94 B.R. 670 (Bankr. C.D. Cal. 1988).  Alternatively, a debtor can make an adequate protection showing even where the collateral is declining in value, as long as the creditor's interest therein is protected by a reasonable equity cushion. *See In re Mellor*, 734 F. 2d 1396 (9th Cir. 1984); *In re Harrington & Richardson, Inc.*, 48 B.R. 431 (Bankr. D.Mass. 1985); *In re McCombs Props. VI, Ltd.*, *supra*.

As established herein and in the Cragun Declaration, the cash collateral pool securing the Lender's indebtedness will not decline through the usage proposed by herein. To the contrary, this usage will preserve and increase the overall value of this collateral.  Additionally, in this case, Lender's $2.3 million asserted secured claim is protected by $8.4 million in receivables, resulting in an equity cushion many times its debt total. This cushion, without more, provides this creditor ample adequate protection. *See In re Mellor*, *supra*; *In re Harrington & Richardson, Inc.*, *supra*; *In re McCombs Props. VI, Ltd.*, *supra*.

**V**

## CONCLUSION

For the foregoing reasons, the Debtor would respectively request that the Court grant the relief prayed for herein.

DATED:  June 23, 2015

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By:   /s/ Garrick H. Hollander
Marc J. Winthrop
Garrick A. Hollander
Jeannie Kim
[Proposed] General Insolvency Counsel for the Debtor and Debtor-in-Possession

Case 8:15-bk-13153-SC    Doc 3    Filed 06/23/15    Entered 06/23/15 16:41:12    Desc
Main Document    Page 12 of 12

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DEBTOR'S <u>EMERGENCY</u> MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 23, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com; vcorbin@winthropcouchot.com

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On _____, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 23, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via Attorney Service - Bin outside of Room 5097**
Honorable Scott C. Clarkson
Ronald Reagan Federal Bldg.
411 W. Fourth St.
Santa Ana, CA 92701

VIA E-MAIL
Debtor: Ken Cragun, CFO – kcragun@local.com; georgina.thomas@usbank.com; romar@google.com; matt@klickthru.com; brady@spacejetmedia.com; mail@allanliang.com; nicole.rogers@teamaol.com; li@engage-bdr.com; lance.r.thomas@aexp.com; vic@advertise.com; aly@airfind.com; Lahrens@lathropgage.com; abaxi@rocketfuelinc.com; sharonb@inner-active.com; brett@admarketplace.com; kia@matchflowmedia.com; peter@bidmonitor.com; dandrin@forensiq.com; newportbeach@rrdfsg.com; rayan@phoenixadmedia.com;; nancy.goldenberg@usdoj.gov

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 23, 2015 | Viann Corbin | */s/ Viann Corbin* |
| *Date* | *Printed Name* | *Signature* |

-12-
MAINDOCS-#212344-v1-Local_Corp_Local_Emerg_Cash_Collateral_Motn.doc