MARC J. WINTHROP – State Bar No. 63218
mwinthrop@winthropcouchot.com
GARRICK A. HOLLANDER – State Bar No. 166316
ghollander@winthropcouchot.com
JEANNIE KIM – State Bar No. 270713
jkim@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Fourth Floor
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>LOCAL CORPORATION, a Delaware corporation,<br><br>            Debtor and<br>            Debtor-in-Possession. | Case No. 8:15-bk-13153 SC<br><br>Chapter 11 Proceeding<br><br>**DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING: (1) PAYMENT AND HONORING OF PRE-PETITION PAYROLL OBLIGATIONS; AND (2) APPROVING PROPOSED EMPLOYEE RETENTION PROGRAM FOR ESSENTIAL NON-INSIDER EMPLOYEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[DECLARATION OF KENNETH S. CRAGUN IN SUPPORT HEREOF FILED CONCURRENTLY HEREWITH]<br><br>DATE:    June 24, 2015<br>TIME:    10:00 a.m.<br>PLACE:   Courtroom 5C<br>            Ronald Reagan Federal Building<br>            and U.S. Courthouse<br>            411 W. Fourth Street<br>            Santa Ana, CA 92701 |

**TABLE OF CONTENTS**

**PAGE**

I. THE NEED FOR EMERGENCY RELIEF ........................................................................... 4

II. STATEMENT OF FACTS .................................................................................................. 4
    A.  The Debtor. .................................................................................................................. 4
    B.  Events Precipitating The Debtor's Financial Difficulties and Efforts to Reorganize. ... 6
        1.  Clawbacks ............................................................................................................. 6
        2.  Operational Results .............................................................................................. 6
    C.  The Pre-Petition Compensation. .................................................................................. 6
    D.  The Pre-Petition Retention Agreement. ...................................................................... 6

III. GOOD CAUSE EXISTS FOR HEARING THIS MOTION ON AN EMERGENCY
     BASIS ................................................................................................................................ 8

IV. THE COURT SHOULD AUTHORIZE THE DEBTOR TO PAY PRE-PETITION
     COMPENSATION AND HONOR EMPLOYEE BENEFITS IN THE ORDINARY
     COURSE ............................................................................................................................ 9
    A.  The Court May Authorize Payment of Pre-Petition Compensation and Honoring of
        Employee Benefits. ...................................................................................................... 9
    B.  All of the Payments in Question Represent Payment of Priority Claims. .................. 11

V. THE COURT SHOULD APPROVE THE PROPOSED EMPLOYEE RETENTION
     PROGRAM FOR ESSENTIAL, NON-INSIDER EMPLOYEES .................................... 12
    A.  The Court Has Discretion to Authorize the Debtor's Assumption of the Pre-Petition
        Retention Agreement. ................................................................................................ 12
    B.  The Court Has Authority to Approve the Retention Program Pursuant to
        Section 363(b) as It Is in the Best Interest of the Estate. ........................................... 13

VI. NOTICE OF THE MOTION IS APPROPRIATE UNDER THE FACTS AND
     CIRCUMSTANCES OF THIS CASE .............................................................................. 14

VII. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

In re Adams Apple, Inc.,
  829 F.2d 1484 (9th Cir. 1987) ............................................................................................. 9

In re America West Airlines, Inc.,
  171 B.R. 674 (Bankr. D. Ariz. 1994) ................................................................................. 13

In re Busy Beaver Bldg. Centers, Inc.,
  19 F.3d 833 (3rd Cir. 1994) .................................................................................................. 9

In re Chateaugay Corp.,
  80 B.R. 279 (S.D.N.Y. 1987) ............................................................................................... 9

In re Circle K Corp.,
  190 B.R. 370 (9th Cir. BAP 1995) ..................................................................................... 12

In re Columbia Packing Co.,
  35 B.R. 447 (Bankr. D. Mass. 1983) ................................................................................... 9

In re Equalnet Communications Corp.,
  258 B.R. 368 (Bankr. S.D. Tex. 2000) .......................................................................... 10, 11

In re Geneva Steel Co.,
  236 B.R. 770 (Bankr. D. Utah 1999) ................................................................................. 14

In re Hooker Inv.,
  145 B.R. 138 (Bankr. S.D.N.Y. 1992) ............................................................................... 13

In re Lehigh & New England Ry. Co.,
  657 F. 2d 570 (3rd Cir. 1981) .............................................................................................. 9

In re Montgomery Ward Holding Corp.,
  242 B.R. 147 (D. Del. 1999) .............................................................................................. 13

In re RVP, Inc.,
  269 B.R. 851 (Bankr. D. Idaho 2001) ................................................................................ 12

In re Structurlite Plastics Corp., (Structurlite I),
  86 Bankr. 922 (Bankr. S.D. Ohio 1988) .............................................................................. 9

In re Texlon Corporation,
  596 F.2d 1092 (2d Cir.1979) ............................................................................................... 9

In the Matter of Interco Incorporated,
  128 B.R. 229 (Bankr. E.D. Mo. 1991) ............................................................................... 13

# TABLE OF AUTHORITIES
## (Continued)

**PAGE**

Ionosphere Club,
   98 B.R. 175 (Bankr. S.D.N.Y. 1989) ........................................................................................ 9

Matter of Canton Casting, Inc.,
   103 B.R. 874 (Bankr. N.D. Ohio 1989) .................................................................................... 9

Matter of Columbia Gas,
   171 B.R. 189 (Bankr. D. Del. 1994) ......................................................................................... 9

**Statutes**

11 U.S.C. § 101(31) ........................................................................................................................ 6
11 U.S.C. § 363(b) ....................................................................................................................... 13
11 U.S.C. § 363(b)(1) .................................................................................................................. 13
11 U.S.C. § 365 ..................................................................................................................... 11, 12
11 U.S.C. § 365(a) ....................................................................................................................... 12
11 U.S.C. § 507 ............................................................................................................................ 11
11 U.S.C. § 507(a) ......................................................................................................................... 2
11 U.S.C. § 507(a)(4) ......................................................................................................... 4, 8, 9, 11
11 U.S.C. § 507(a)(5) ........................................................................................................... 4, 8, 11
11 U.S.C. § 507(a)(8)(D) ...................................................................................................... 4, 8, 11

**Rules**

Fed. R. Bankr. P. 2002 ................................................................................................................. 14
Fed. R. Bankr. P. 9006 ................................................................................................................... 8
Fed. R. Bankr. P. 9006(c) ....................................................................................................... 8, 14

Local Corporation (the "Debtor" or the "Company") hereby moves the Court (the "Motion"), <u>on an emergency basis</u>, for an order granting the following relief:

(1) Authorizing payment of pre-petition employee wage, salary and commission obligations (collectively, the "Pre-petition Wages") owed by the Debtor, up to the priority limit set forth in Section 507(a) of Title 11 of the United States Code (the "Bankruptcy Code");

(2) Authorizing the Debtor to reimburse its employees for ordinary course pre-petition employee business expenses incurred by its employees in accordance with company policy and to pay other employee benefit obligations incurred in the ordinary course, including, but not limited to, 401(k) plan employer contributions, workers' compensation, medical, life insurance, disability insurance, and miscellaneous other benefits incurred and payable in the ordinary course (collectively, together with the Pre-petition Wages, the "Pre-Petition Compensation");

(3) Authorizing the Debtor to honor but not pay, in the ordinary course, existing employee practices, programs, and policies related to vacation, sick, holiday, jury duty, other paid leave claims (collectively, the "Employee Benefits");

(4) Authorizing the Debtor to take all actions reasonable and necessary to comply with its obligations to its existing payroll service, Paycom Software, Inc. ("Paycom");

(5) Authorizing and directing all banks to honor the Debtor's pre-petition checks for payment of any of the foregoing, and prohibiting all banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing;

(6) Approving the proposed employee retention program described herein, which seeks to retain non-insider employees (the "Retention Program"); and

(7) Such additional relief as the Court deems just and proper.

This Motion is made based on the memorandum of points and authorities appended hereto, the declaration of Kenneth S. Cragun filed concurrently herewith (the "Cragun Declaration"), and

1  on such other evidence that the Court may elect to consider prior to or at the hearing on this

2  matter.

3  DATED: June 23, 2015            **WINTHROP COUCHOT**
                                   **PROFESSIONAL CORPORATION**
4

5

6                                  By:  /s/ Marc J. Winthrop
                                       Marc J. Winthrop
7                                      Garrick A. Hollander
                                       Jeannie Kim
8                                  [Proposed] General Insolvency Counsel for
                                   Debtor and Debtor-in-Possession

# I.

## THE NEED FOR EMERGENCY RELIEF

It is imperative that the Debtor retains the support of its forty-eight (48) full-time, salaried employees (collectively, the "Employees," and singularly, an "Employee") in order to preserve and maintain its ongoing business operations and to meet the needs of its customers. To retain this support, the Debtor must timely pay and honor, in the ordinary course, all pre-petition payroll and wage related obligations owed to this constituency. Moreover, the Debtor desires to minimize the potential hardship that the Employees may suffer if the Debtor is not able to retain and properly incentivize its workforce. Without the Employees, the Debtor cannot maintain its going concern value. Therefore, the payment and honoring of the Debtor's obligations to its Employees is necessary to maintain morale, avoid the potential for hardship that an Employee may suffer, and prevent Employees from leaving the Debtor's employ during this critical time for the Debtor.

Furthermore, granting the relief that the Debtor requests herein will not prejudice general unsecured creditors or materially affect the value of the Debtor's assets because the claims sought to be paid herein have priority over general unsecured claims pursuant to section 507(a)(4), (a)(5) and (a)(8)(D) of the Bankruptcy Code.

The Debtor must fund its payroll obligations by making payment to Paycom, its third party payroll administrator, on or before June 29, 2015, to pay to Employees for wages, salaries and commission earned from June 16, 2015 through June 30, 2015, which includes the Pre-Petition Compensation earned from June 16, 2015 through June 23, 2015, or the Petition Date. As a result, the need for judicial relief is immediate. The Debtor believes that Employees will leave if they are not paid. Without its workforce, the Debtor's business will suffer immediate and irreparable damage. In contrast, if the Debtor can promptly obtain the relief sought herein, its business value will be preserved for the benefit of all creditors.

## II.

## STATEMENT OF FACTS

**A.  The Debtor.**

The Debtor, a publicly traded Delaware corporation (NASDAQ symbol LOCM), is a

leading local advertising technology company located in Irvine, California, that connects millions of online and mobile consumers with businesses and products through a variety of innovative digital advertising solutions. Founded in 1999, the Debtor went public in 2004 and has been one of the fastest growing online local media businesses for a number of years, and for the past four years it has been listed by Deloitte on its Technology Fast 500.

The Debtor is in the business of providing search results to consumers who are searching online for local businesses, products and services. The search results generated by the Debtor's technology platform consist primarily of local business listings that the Debtor's technology aggregates, indexes, normalizes, and syndicates. These search results are provided through the Debtor's flagship Local.com website and through other proprietary websites, and they are also delivered to a network of over 1,600 other websites that rely on the Debtor's search syndication services to provide local search results to their own users ("Network"). The Debtor generates revenue from these services through the various ad units that are placed alongside search results, which include pay-per-click, pay-per-call, and display (banner) ad units, including video. The Debtor's Local.com website has approximately 14 million unique visitors each month ("MUVs"), and its Network syndication services reach approximately 5 million MUVs.

The Debtor's expertise in the areas of local search, search engine marketing, search engine optimization, search syndication/analysis and reporting at large scale, internet indexing and normalizing has enabled the company to develop and deploy new technologies and products. As of this writing, the Debtor holds thirteen patents, and a number of additional patent applications are pending. These technologies have enabled the Company to achieve great success in growing the number of consumers that its media reaches. By the end of 2013, the Company had reached record levels of traffic in the mobile search space.

In calendar year 2014, the Debtor generated approximately $82.0 million in revenues, $2.2 million in adjusted EBITDA and a net loss of approximately $5.0 million. The Debtor has generated positive EBITDA for eight of the last nine quarters. As of June 22, 2015, the Debtor had approximately $20,000 in cash, $8.8 million in accounts receivables, plus intellectual property assets with significant value.

**B.** **Events Precipitating The Debtor's Financial Difficulties and Efforts to Reorganize.**

The Debtor's Chapter 11 filing on June 23, 2015 (the "Petition Date") was precipitated by its short term cash flow needs. This problem was caused by the following developments:

1. <u>Clawbacks</u>. The Debtor's Network partners, including Yahoo and Google, pay the Debtor based upon the amount of "traffic" that is generated by or through the Debtor's services and technologies. In the first quarter of 2014, the Debtor was anticipating $1.6 million of revenue from these sources based upon "traffic" that was later determined to be of too low a quality to justify this payment. As a result, this $1.6 million in revenue was not collected;

2. <u>Operational Results</u>. Like most growing technology companies, the Debtor periodically expends more cash that it takes in from operations. This "burn" factor is largely attributable to the fact that a significant amount of corporate revenues are expended on developing and enhancing technological platforms and products. Although these platforms and products will generate revenues in the future, the product cost is front-loaded and consequently this product development expense can create, or in this case, add to, a near term liquidity problem.

**C.** **The Pre-Petition Compensation.**

As of the Petition Date, the Debtor employs approximately forty-eight (48) Employees, all of whom are full time, salaried employees. Of these Employees, three (3) are insiders, as that term is defined under Section 101(31) of the Bankruptcy Code, three (3) are executives, and the balance of the workforce is comprised of general employees. **The Pre-Petition Wages include compensation to three (3) insiders in this case, but <u>no</u> payments will be made to the insiders until such time as the Debtor's post-petition compensation is authorized to be paid pursuant to the U.S. Trustee Guidelines.** The Employees are paid bi-monthly, on the 15th and last days of the month, two weeks in arrears, by direct deposit. Prior to each payroll date, the Debtor funds the payroll to its Paycom for payment of bi-monthly salaries and benefits to the Employees. On June 29, 2015, the Debtor must fund its payroll obligations related to its next payroll scheduled for

June 30, 2015. The amounts to be paid to the Employees on June 30, 2015, are for wages, salaries, commissions and benefits earned between June 16, 2015 through and including June 30, 2015. The aggregate Pre-petition Wages due to Employees will be approximately $176,000 and the aggregate amount of wages, salaries and commissions payable on account of services rendered, post-petition, will be approximately $123,000.

### D. The Pre-Petition Retention Agreement.

On or about March 27, 2015, the Debtor entered into a "Retention Agreement" with forty-one (41) non-insider employees. A true and correct copy of a form Retention Agreement, which mirrors each of the Retention Agreements that has been offered and entered into with each of the retained employees, is attached to the Cragun Declaration as Exhibit "2."

In anticipation of a potential change in control of the Debtor's business (a "CIC Transaction"), the Debtor entered into the Retention Agreements in an effort to retain employees that the Debtor believed were critical to the preservation of the Debtor's customers, daily operations, and going concern value of its business. Collectively, these employees have the knowledge and skill necessary for the Debtor to maintain its customer relations and continue developing its technology platforms to the deployment and profitability stages.

The key terms of the Retention Agreement provide that, if a retained employee remains in the Debtor's employ through the date that is six (6) months after a CIC Transaction, the Debtor will pay to the retained employee a "Retention Bonus" in the amount of 25% of the retained employee's then-current annual salary. The Debtor agreed to pay to the retained employees the Retention Bonus *in addition to* the retained employee's annual salary and other bonus amounts payable to the employee.

The Debtor has already reduced the number of its employees in efforts to reduce costs. The remaining employees are necessary to preserve and maximize the value of the Debtor's business. Accordingly, the Debtor believes that approval of the Retention Agreements is necessary to increase the retention of its employees, who are critical to achieving the Debtor's objections in Chapter 11. If the retained employees leave the Debtor's employ, the Debtor's viability as a going concern will be severely compromised. In the careful exercise of its business

judgment, the Debtor has determined that assumption of the Retention Agreements and implementation of the terms and conditions thereof as a Retention Program is in the best interests of the Debtor's estate. Based on the foregoing, the Debtor respectfully requests that the Court authorize the assumption of each Retention Agreement.

## III.

## GOOD CAUSE EXISTS FOR HEARING THIS
## MOTION ON AN EMERGENCY BASIS

Procedural authorization for this emergency Motion is found in Rule 9006[1] of the Federal Rules of Bankruptcy Procedure, and in Local Bankruptcy Rule 9075-1[2]. The need for the Debtor to pay pre-petition claims of its employees is essential because the Debtor's business is dependent upon its labor. Absent payment of the Pre-petition Wages and honoring of the Employee Benefits, the Employees may cease working and seek employment elsewhere. Any such disruption would have a devastating effect upon the Debtor's business and its creditors. If the Debtor obtains the relief sought herein, its business operations will continue in the ordinary course, customer needs will be met, and the Debtor will preserve and maximize the overall value of the Debtor's business enterprise for the benefit of its creditors. Moreover, the Pre-petition Compensation is entitled to priority treatment under Sections 507(a)(4), (a)(5) and (a)(8)(D) of the Bankruptcy Code. The Debtor does not propose to pay to any particular Employee, including insiders, Pre-petition Compensation in excess of the priority limit allowable under the Bankruptcy Code. Accordingly, the Debtor submits that emergency relief is both necessary and appropriate.

---

[1] Bankruptcy Rule 9006(c) provides, in pertinent part: "when an act is required or allowed to be done at or within a specified time by these rules or be a notice given thereunder or by order of the court, the court for cause shown may in its discretion with or without motion or notice *order the period reduced*."

[2] Rule 9075-1(a) and (b) of the Local Bankruptcy Rules for the Central District of California provides for hearings on an emergency basis or, alternatively, on notice shorter than would otherwise be required under the Local Bankruptcy Rules.

-8-

# IV.

## THE COURT SHOULD AUTHORIZE THE DEBTOR TO PAY PRE-PETITION COMPENSATION AND HONOR EMPLOYEE BENEFITS IN THE ORDINARY COURSE

### A. The Court May Authorize Payment of Pre-Petition Compensation and Honoring of Employee Benefits.

Bankruptcy Code Section 507(a)(4) gives priority status to allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual within 180 days of the Petition Date, up to $12,475 per individual. *See* 11 U.S.C. § 507(a)(4). Courts have consistently authorized the payment of pre-petition priority wages and other debt in the absence of a plan of reorganization, where such payments create "the greatest likelihood of payment of creditors in full or at least proportionately."[3]

As stated by the Ninth Circuit in *In re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir. 1987):

> [A]nother "fundamental tenet"--rehabilitation of debtors, which may supersede the policy of equal treatment. Cases have permitted unequal treatment of prepetition debts when necessary for rehabilitation, in such contexts as (i) prepetition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts. *See* Ordin, Case Comment, *In re Texlon Corporation*, 596 F.2d 1092 (2d Cir.1979): Finality of Order of Bankruptcy Court, 54 Amer. Bankr. L.J. 173, 177 (1980). … [I]t illustrates a Congressional willingness to subordinate the interests of pre-petition creditors to the goal of rehabilitation.

*Adams Apple*, 829 F.2d at 1490.

Courts have also authorized Chapter 11 debtors to honor pre-petition employee benefits. *See Matter of Canton Casting, Inc.*, 103 B.R. 874 (Bankr. N.D. Ohio 1989) (authorizing payment of pre-petition vacation benefits); *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 853 (3rd Cir. 1994) ("the bankruptcy court entered numerous interim orders …authorizing … the payment of pre-petition wages *and employee benefits*…"); *In re Chateaugay Corp.*, 80 B.R. 279, 281

---

[3] *See Matter of Columbia Gas*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); *In re Lehigh & New England Ry. Co.*, 657 F. 2d 570, 581 (3rd Cir. 1981); *Ionosphere Club*, 98 B.R. 175 (Bankr. S.D.N.Y. 1989); *In re Structurlite Plastics Corp., (Structurlite I)*, 86 Bankr. 922, 932 (Bankr. S.D. Ohio 1988) (citing *In re Chateaugay Corp.*, 80 Bankr. 279, 287 (S.D.N.Y. 1987)); *In re Columbia Packing Co.*, 35 B.R. 447 (Bankr. D. Mass. 1983); Collier on Bankruptcy, ¶ 507.05[1] (16th ed. 2015).

(S.D.N.Y. 1987) ("Judge Lifland, upon application of LTV, issued an order authorizing and empowering LTV to continue payment of pre-petition wages and salaries, *employee reimbursement expenses, and benefits*.").

For a number of reasons, the Bankruptcy Code affords special treatment to certain pre-petition claims of employees. Wages, salaries and commissions earned during the 180 days pre-petition but unpaid are priority claims, and, thus, must be paid in full in a reorganization case. The ability to ensure that employees receive their unpaid pre-petition salary and do not miss a paycheck is critical to obtaining the stability necessary for a successful reorganization, which benefits all creditors. Compared with a typical claim in bankruptcy, wages represent a large part of an employee's wealth. In addition, unlike an ordinary trade creditor, the typical employee does not have other sources of income and, thus, cannot diversify the risk of the employer's default. Therefore, this Court has authority to allow the Debtor to pay certain pre-petition claims.

In this case, as more particularly set forth in the Cragun Declaration, ample cause exists to permit the Debtor to pay the Pre-petition Compensation and honor the Employee Benefits. Specifically, as evidenced by the Cragun Declaration, continued operation of the Debtor's business is essential to its ability to maximize the value of its business. The loss of any Employee at this critical juncture could materially damage the value of its overall business enterprise. Hence, compelling grounds exist for the entry of an order authorizing the Debtor to pay the Pre-petition Compensation.

Furthermore, it is critical that the Debtor continues, in the ordinary course, those personnel policies that were in effect prior to the Petition Date. As noted by the court in *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000), "the need to pay [pre-petition employee wage claims] in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted." *Id.* at 370. If the direct deposits issued by Paycom in payment of any of the Pre-petition Compensation, if other employee obligations are dishonored, or if such obligations are not timely paid post-petition, the Employees may suffer extreme personal hardship and may be unable to pay their daily living

-10-

1  expenses. If the Employees suffer personal hardship, Employee morale and goodwill would
2  decline, undermining the Debtor's stability at this crucial juncture. Indeed, the resulting impact
3  could devastate the Debtor, its value, its customers, and its ability to achieve its objectives in
4  Chapter 11. Based on the foregoing, the Debtor believes that, unless the Court allows the
5  payments requested herein to its employees, the disruption to the Debtor's employees and business
6  practices would substantially jeopardize the Debtor's ability to reorganize its financial affairs.

7  Except as expressly set forth herein, nothing in this Motion nor any payments made by the
8  Debtor pursuant to this Motion shall be deemed an assumption or rejection of any employee
9  benefit plan, employment agreement, other program or contract, or otherwise affect the Debtor's
10 rights under Section 365 the Bankruptcy Code to assume or reject any executory contract between
11 the Debtor and any Employee or payroll administration service.

12 **B.    All of the Payments in Question Represent Payment of Priority Claims.**

13 All of the payments in question constitute priority claims pursuant to Sections 507(a)(4),
14 (a)(5) and (a)(8)(D) of the Bankruptcy Code and are therefore more likely to be paid in any event.
15 Since all priority payments eventually must be made before general unsecured claims can be paid,
16 courts often permit the payment of pre-petition wages so that the debtor-in-possession may
17 maintain an effective workforce, especially where the amount of the payment is relatively small
18 and where it appears that the wages being paid would ultimately qualify as priority claims. *See In*
19 *re Quality Interiors, Inc.*, *supra*, at 396 (citing 11 U.S.C. §507).

20 The Debtor believes that all of the subject Pre-petition Compensation, as well as claims for
21 vacation and sick leave benefits and other related benefits, constitute priority claims pursuant to
22 the provisions of Sections 507(a)(4), (a)(5) and (a)(8)(D), which will be paid by the Debtor's estate
23 in any event. The Debtor is unable to determine whether the Employees earned all vacation,
24 severance and sick leave pay within 180 days of the Petition Date or whether contributions to
25 employee benefit plans arise from services rendered within 180 days of the Petition Date;
26 however, the Debtor is not seeking to pay such claims – only authority to honor them. Moreover,
27 none of the payroll amounts will exceed the statutory cap. Consequently, there is ample authority
28 and legal justification for this Court to authorize the Debtor to pay the Pre-petition Compensation

-11-

1  and to honor the Employee Benefits , as the majority of these obligations are relatively small
2  amounts and within priority limits in any event.

## V.
## THE COURT SHOULD APPROVE THE PROPOSED EMPLOYEE RETENTION PROGRAM FOR ESSENTIAL, NON-INSIDER EMPLOYEES

### A. The Court Has Discretion to Authorize the Debtor's Assumption of the Pre-Petition Retention Agreement.

Section 365 of the Bankruptcy Code authorizes a trustee (or a debtor-in-possession) to assume an executory contract. *See* 11 U.S.C. § 365(a). The principle behind assumption is to balance a creditor's contractual rights against a debtor's right to have an opportunity to reorganize. *See In re RVP, Inc.*, 269 B.R. 851, 853-54 (Bankr. D. Idaho 2001) (citing *In re Circle K Corp.*, 190 B.R. 370, 376 (9th Cir. BAP 1995)).

Pre-petition, the Debtor offered its general employees a Retention Bonus if they remained in the Debtor's employ for six (6) months after a CIC Transaction. The Debtor made such offer to incentivize its employees to remain with the Debtor and preserve its going concern value. Each current employee who is not an insider or an executive-level employee accepted the offer and executed a Retention Agreement. At this time, the Debtor continues to believe that incentivizing its employees to remain in the Debtor's employ through a CIC Transaction is absolutely essential to meeting its goals in Chapter 11. The Debtor further believes that assumption of the Retention Agreements, post-petition, and implementation of the employee Retention Program is in the best interests of the Debtor's estate and its creditors.

Here, without Court authorization to assume the Retention Agreements the retained employees may leave the Debtor's employ. The Debtor's workforce is highly knowledgeable about the Debtor's technologies, and has long-standing relationships with its customers. The Debtor cannot quickly replace these employees or recreate the customer relationships that they have established over the years. The Debtor believes it must demonstrate its commitment to the retained employees and respectfully seeks Court authorization to assume the Retention Agreement and abide, post-petition, by the terms and conditions set forth therein as the Debtor's proposed

-12-

1  Retention Program.

2        **B.**     **The Court Has Authority to Approve the Retention Program Pursuant to**
3                  **Section 363(b) as It Is in the Best Interest of the Estate.**

4        Section 363(b)(1) of the United States Bankruptcy Code authorizes the Debtor, after

5  notice and a hearing, to "use, sell or lease, other than in the ordinary course of business, property

6  of the estate." In reviewing a proposed retention bonus to essential employees, courts will

7  generally approve such bonuses or plans under a business judgment test. In *In re Montgomery*

8  *Ward Holding Corp.*, 242 B.R. 147 (D. Del. 1999), the chapter 11 debtor-retailer sought

9  approval of various employee incentive programs intended to retain key employees during the

10  debtors' reorganization. A creditor group objected. The bankruptcy court granted debtor's

11  motion, and the creditors appealed. The district court affirmed the approval of the incentive

12  programs, holding that the debtor had established a sound business purpose for the proposed

13  retention, severance, and retirement programs. The court analyzed the motion under Section

14  363(b), seeking approval for the use, sale or lease of property of the estate other than in the

15  ordinary course of business, and found that the bankruptcy court has considerable discretion

16  under this provision. *Id.* at 155.

17        In the *Matter of Interco Incorporated*, 128 B.R. 229 (Bankr. E.D. Mo. 1991), the

18  Chapter 11 debtors sought authority to implement a performance-based employee retention

19  program, and to pay confirmation benefits to two key employees. The bankruptcy court held

20  that: (1) the debtors would be granted authority to implement performance-based employee

21  retention program to ensure that critical executives remained with the debtors throughout their

22  reorganization; and (2) the debtors would be granted authority to make confirmation awards to

23  their chief executive officer and executive vice president. *Id.* at 232-234.

24        Similarly, in *In re America West Airlines, Inc.*, 171 B.R. 674 (Bankr. D. Ariz. 1994), the

25  Chapter 11 debtor-airline moved for authority to pay success bonuses to certain officers and

26  employees. The bankruptcy court held that bonus awards proposed by the debtor were

27  reasonable and fair under the history of the case, and would be approved as a valid exercise of

28  the debtor's business judgment. *Id.* at 678 (citations omitted). *See also In re Hooker Inv.*, 145

-13-

B.R. 138, 142 (Bankr. S.D.N.Y. 1992) ("The Debtor also sought authorization to pay retention bonuses and other compensation to selected employees…. At a hearing on October 30, 1989 on the Debtor's pending application, Judge Brozman entered an order … **authorizing the Debtor to grant retention bonuses**.") (emphasis added); *In re Geneva Steel Co.*, 236 B.R. 770, 773 (Bankr. D. Utah 1999).

In this case, it is clear that a sound business purpose exists to authorize the Debtor to assume the Retention Agreement and to implement the terms and conditions thereof as a post-petition Retention Program. The remaining retained employees are necessary to the Debtor's ability to implement a successful CIC Transaction will be in jeopardy. Moreover, the Debtor has not offered a retention bonus to its three (3) executives or four (4) insiders. The retained employees are comprised only of the **non-insider**, **non-executive** employees that have remained with the Debtor notwithstanding pre-petition reductions in its workforce. The Debtor believes, in its business judgment, that the proposed Retention Program is reasonable under the circumstances.

Based upon the foregoing, the Debtor believes that Court approval of the Retention Program, in accordance with the terms and conditions set forth in the Retention Agreements is in the best interests of the Debtor's estate and its creditors and respectfully requests that this Court approve the proposed Retention Program.

## VI.

## NOTICE OF THE MOTION IS APPROPRIATE UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE

The Debtor has served a copy of this Motion on its secured creditors, the unsecured creditors holding the twenty (20) largest claims against the Debtor, and the Office of the United States Trustee. The Debtor respectfully submits that such notice is appropriate and comports with the requirements of the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California. *See* Fed. R. Bankr. P. 2002 and 9006(c); LBR Rule 9075-1(a).

## VII.

## CONCLUSION

For the foregoing reasons, the Debtor would respectively request that the Court grant the relief prayed for herein.

DATED: June 23, 2015

**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**


By: /s/ Marc J. Winthrop
    Marc J. Winthrop
    Garrick A. Hollander
    Jeannie Kim
[Proposed] General Insolvency Counsel to
the Debtor and Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING: (1) PAYMENT AND HONORING OF PRE-PETITION PAYROLL OBLIGATIONS; AND (2) APPROVING PROPOSED EMPLOYEE RETENTION PROGRAM FOR ESSENTIAL NON-INSIDER EMPLOYEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 23, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 23, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service - Bin outside of Room 5097**
Honorable Scott C. Clarkson
Ronald Reagan Federal Bldg.
411 W. Fourth St.
Santa Ana, CA 92701

VIA E-MAIL: Debtor: Ken Cragun, CFO – kcragun@local.com; georgina.thomas@usbank.com; romar@google.com; matt@klickthru.com; brady@spacejetmedia.com; mail@allanliang.com; nicole.rogers@teamaol.com; li@engage-bdr.com; lance.r.thomas@aexp.com; vic@advertise.com; aly@airfind.com; Lahrens@lathropgage.com; abaxi@rocketfuelinc.com; sharonb@inner-active.com; brett@admarketplace.com; kia@matchflowmedia.com; peter@bidmonitor.com; dandrin@forensiq.com; newportbeach@rrdfsg.com; rayan@phoenixadmedia.com; ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 23, 2015 | Viann Corbin | /s/ Viann Corbin |
| *Date* | *Printed Name* | *Signature* |